Brent V. Manning (Utah State Bar No. 2075)
Michael Harmond (Utah State Bar No. 17230)
MANNING CURTIS BRADSHAW &
BEDNAR PLLC
215 South State Street, Suite 350
Salt Lake City, Utah 84111
(801) 363-5678
bmanning@mc2b.com
mharmond@mc2b.com

Jim T. Banks (*pro hac vice* forthcoming)
Adam M. Kushner (*pro hac vice* forthcoming)
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
(202) 637-5600
james.banks@hoganlovells.com
adam.kushner@hoganlovells.com*

*Counsel for Proposed Intervenors Utah Diné Bikéyah, Friends of Cedar Mesa, the Society of Vertebrate Paleontology, Archaeology Southwest, Conservation Lands Foundation, Inc., Patagonia Works, The Access Fund, and the National Trust for Historic Preservation in the United States*

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| ZEBEDIAH GEORGE DALTON; BLUERIBBON COALITION; KYLE KIMMERLE; and SUZETTE RANEA MORRIS;<br><br>*Plaintiffs*,<br>v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States; DEBRA A. HAALAND, in her official capacity as Secretary of Interior; DEPARTMENT OF THE INTERIOR; TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management; BUREAU OF LAND MANAGEMENT; THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture; DEPARTMENT OF AGRICULTURE; RANDY MOORE, in his official capacity as Chief of the United States Forest Service; and UNITED STATES FOREST SERVICE,<br><br>*Defendants*. | MOTION TO INTERVENE UNDER RULE 24 AND MEMORANDUM OF LAW IN SUPPORT OF UTAH DINÉ BIKÉYAH, FRIENDS OF CEDAR MESA, THE SOCIETY OF VERTEBRATE PALEONTOLOGY, ARCHAEOLOGY SOUTHWEST, CONSERVATION LANDS FOUNDATION, INC., PATAGONIA WORKS, THE ACCESS FUND, AND THE NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES<br><br>Civil Action No. 4:22-cv-0060-DN<br><br>Hon. David Nuffer |

*\*Additional counsel listed on inside cover*

Additional counsel:

William E. Havemann (*pro hac vice* forthcoming)
Michael J. West (*pro hac vice* forthcoming)
Sarah Ruckriegle (*pro hac vice* forthcoming)
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
(202) 637-5600
will.havemann@hoganlovells.com
michael.west@hoganlovells.com
sarah.ruckriegle@hoganlovells.com


# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................1

STATEMENT .................................................................................................................................2

      A.      Background ..............................................................................................................2

      B.      Proposed Intervenors .............................................................................................4

ARGUMENT ..................................................................................................................................6

I.       PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT. ......6

II.      ALTERNATIVELY, PERMISSIVE INTERVENTION IS WARRANTED. .................11

CONCLUSION ...............................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Coalition of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*,
   100 F.3d 837 (10th Cir. 1996) ..................................................................................7

*Kane Cnty. v. United States*,
   928 F.3d 877 (10th Cir. 2019) ..............................................................7, 9, 10, 11

*In re SEC*,
   296 F. App'x 637 (10th Cir. 2008) ..........................................................................7

*State of Utah v. Kennecott Corp.*,
   801 F. Supp. 553 (D. Utah 1992), *appeal dismissed*, 14 F.3d 1489 (10th Cir.
   1994) ......................................................................................................................12

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972)................................................................................................10

*Utah Ass'n of Cntys. v. Clinton*,
   255 F.3d 1246 (10th Cir. 2001) .........................................................7, 8, 9, 11

*WildEarth Guardians v. Nat'l Park Serv.*,
   604 F.3d 1192 (10th Cir. 2010) .........................................................7, 8, 9, 11

**Statutes**

54 U.S.C. § 312102.........................................................................................................6

54 U.S.C. § 320301(a) ...................................................................................................2

54 U.S.C. § 320301(b) ...................................................................................................2

**Regulations**

Bears Ears National Monument,
   86 Fed. Reg. 57321 (Oct. 8, 2021)......................................................................3, 4

Establishment of the Bears Ears National Monument,
   82 Fed. Reg. 1139 (Dec. 28, 2016) ....................................................................2, 3

Modifying the Bears Ears National Monument,
   82 Fed. Reg. 58081 (Dec. 4, 2017)........................................................................3

Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis,
  86 Fed. Reg. 7037 (Jan. 20, 2021) ......................................................................................... 3

**Rules**

Fed. R. Civ. P. 24 ............................................................................................................... 1, 2

Fed. R. Civ. P. 24(a)(2) ......................................................................................................... 6

Fed. R. Civ. P. 24(b) ........................................................................................................... 11

Fed. R. Civ. P. 24(b)(1)(B) ................................................................................................. 12

Fed. R. Civ. P. 24(b)(3) ....................................................................................................... 12

Utah Diné Bikéyah, Friends of Cedar Mesa, the Society of Vertebrate Paleontology, Archaeology Southwest, Conservation Lands Foundation, Inc., Patagonia Works, The Access Fund, and the National Trust for Historic Preservation in the United States (collectively, "Proposed Intervenors") hereby move to intervene in the above-captioned action as Defendants under Federal Rule of Civil Procedure 24.[1] Undersigned counsel have conferred with counsel for the existing parties. The Government reserves taking a position until this motion is filed. Plaintiffs take no position on the motion to intervene, provided that the participation of intervenors does not delay resolution of this case. If intervention is granted, Proposed Intervenors will coordinate with any other intervenors to ensure streamlined proceedings and avoid duplicative filings.[2]

## INTRODUCTION

In 2016, after years of advocacy by Proposed Intervenors and others, President Obama exercised his authority under the Antiquities Act of 1906 to create Bears Ears National Monument ("Bears Ears"). When President Trump later dismantled the monument, Proposed Intervenors and others filed suit in federal court. Meanwhile, mining claims were staked; looters rummaged through relics; vandals desecrated sacred sites; some members of Proposed Intervenors lost research funding; and Proposed Intervenors were forced to divert their resources to provide a baseline level of protection to the region. In October 2021, after more advocacy by Proposed Intervenors and others, President Biden restored and expanded Bears Ears.

---

[1] The Society of Vertebrate Paleontology and Conservation Legal Foundation have joined in another motion to intervene brought on behalf of a coalition of organizations with significant interests in Grand Staircase. This motion concerns the substantial interests of these organizations in the protection of Bears Ears.

[2] A proposed Answer is attached as Ex. E.

On August 24, 2022, Plaintiffs Garfield County, Utah; Kane County, Utah; and the State of Utah filed suit, claiming that President Biden exceeded his authority under the Antiquities Act in restoring Bears Ears and Grand Staircase-Escalante National Monument ("Grand Staircase"), another national monument dismantled by President Trump.

Proposed Intervenors move to intervene under Rule 24. They satisfy all the requirements for intervention as of right. Their motion is timely. Their interests in this litigation are indistinguishable from interests the Tenth Circuit found sufficient in an analogous case. These interests will be adversely affected if this Court grants Plaintiffs' requested relief. And given that Proposed Intervenors and the Government have different views on the scope of Presidential authority under the Antiquities Act, those interests are not adequately represented. Should this Court disagree, it should nonetheless grant Proposed Intervenors permission to intervene.

## STATEMENT

**A.     Background**

Bears Ears National Monument was first established in 2016, when President Obama issued a Proclamation under the Antiquities Act ("the 2016 Proclamation").[3] The Antiquities Act empowers the President to "declare" certain objects to be "national monuments" and to "reserve parcels of [federal] land as part of the national monuments."[4] Parcels "shall be confined to the smallest area compatible with the proper care and management of the objects to be protected."[5]

---

[3] Establishment of the Bears Ears National Monument, 82 Fed. Reg. 1139, 1139 (Dec. 28, 2016).
[4] 54 U.S.C. § 320301(a), (b).
[5] *Id.* § 320301(b).

Bears Ears originally covered 1.35 million acres, and mining and mineral leasing were generally prohibited in its bounds.[6]

In 2017, President Trump eviscerated Bears Ears, replacing it with two disconnected "units" ("2017 Proclamation").[7] These units comprised 201,876 acres, roughly 11,200 of which were not originally included in Bears Ears. More than 1.15 million acres—or 85% of the original monument—were removed (the "Revoked Area").[8] Lands in the Revoked Area were opened to "mineral and geothermal leasing" and mining activities;[9] archaeological and anthropological objects were exposed to looting and vandalism.

Proposed Intervenors challenged the 2017 Proclamation in federal court.[10] The parties eventually cross-moved for partial summary judgment on whether President Trump lacked authority to revoke or reduce Bears Ears. Before the court ruled on those motions, President Biden directed agencies to review any federal actions that threatened "national treasures and monuments."[11] On the Government's unopposed motion, the court stayed the proceedings. That stay remains in place.

On October 8, 2021, President Biden issued a Proclamation restoring Bears Ears ("2021 Proclamation").[12] This Proclamation declared that both the "landscape itself" and "innumerable

---

[6] 82 Fed. Reg. at 1143.
[7] Modifying the Bears Ears National Monument, 82 Fed. Reg. 58081, 58085 (Dec. 4, 2017).
[8] *Id.*
[9] *Id.*
[10] *See Utah Diné Bikéyah v. Trump*, No. 17-cv-02605 (D.D.C.).
[11] Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis, 86 Fed. Reg. 7037, 7037 (Jan. 20, 2021).
[12] Bears Ears National Monument, 86 Fed. Reg. 57321, 57322 (Oct. 8, 2021).

objects" in the region were objects in need of protection under the Antiquities Act.[13] It restored the boundaries established in the 2016 Proclamation, and also included the 11,200 new acres protected under the 2017 Proclamation; Bears Ears now covers 1.36 million acres.[14] This is the "smallest area compatible with the proper care and management of the objects" to be protected.[15] Monument lands are again closed to new mining and oil leasing claims.[16]

On August 24, 2022, Plaintiffs sued President Biden and others.[17] Plaintiffs claim that President Biden exceeded his authority under the Antiquities Act in restoring Bears Ears and Grand Staircase. Plaintiffs seek a declaratory judgment that the 2021 Proclamation is unlawful and an injunction restraining any President from implementing or enforcing the 2021 Proclamation.[18]

**B.     Proposed Intervenors**

**1. Utah Diné Bikéyah** ("UDB") is a nonprofit organization headquartered in Utah. It preserves Native American traditions, with a focus on preserving the Bears Ears region for its cultural, ancestral, and paleontological resources.[19] It also focuses on preventing mining in the region.[20] This area is central to UDB members' religious and cultural practices; members regularly visit the area for religious activities.[21]

---

[13] *Id.* at 57322, 57331.
[14] *Id.* at 57331-32.
[15] *Id.* at 57330-31.
[16] *Id.* at 57331.
[17] *See* Compl., ECF No. 2.
[18] *Id.* at 52.
[19] Ex. A, Maryboy Decl. ¶ 11.
[20] *Id.*
[21] *Id.* ¶¶ 23-24.

**2. Friends of Cedar Mesa** ("FCM") is a nonprofit organization headquartered in Utah. Its mission is to ensure that the Bears Ears region is protected.[22] FCM staff and board members use the Bears Ears region for activities, including hiking and rock climbing.[23]

**3. The Society of Vertebrate Paleontology** ("SVP") is a nonprofit organization headquartered in Maryland. SVP is the world's largest paleontological organization. Part of its mission is to support the conservation of fossil sites.[24] Because the Bears Ears region is rich in fossils, many SVP members conduct research in the region.[25]

**4. Archaeology Southwest** is a nonprofit organization headquartered in Arizona. Its mission is to pursue "preservation archaeology"—a conservation-based approach to archaeology—in the southwestern United States, including in Bears Ears.[26]

**5. Conservation Lands Foundation, Inc.** ("CLF") is a nonprofit organization headquartered in Colorado. Upon information and belief, CLF is the only nonprofit dedicated to safeguarding National Conservation Lands—which now include Bears Ears—under the care of the Bureau of Land Management.[27]

---

[22] Ex. B, Hadenfeldt Decl. ¶¶ 11-12.

[23] *Id.* ¶¶ 10, 21, 46, 67.

[24] Ex. C, Polly Decl. ¶ 9.

[25] *Id.*

[26] Decl. of William Doelle in Support of Archaeology Southwest's Standing at 2, *Hopi Tribe*, No. 17-cv-02590 (D.D.C. Jan. 9, 2020) ("*Hopi*"), ECF No. 164-2 ("Doelle Decl.").

[27] Decl. of Peter Metcalf in Support of Conservation Lands Foundation, Inc.'s Standing at 1, *Hopi*, ECF No. 164-15 ("Metcalf Decl.").

**6. Patagonia Works** is a California benefit corporation committed to conservation and social equity. Patagonia's employees have visited Bears Ears numerous times for various purposes including, but not limited to, product testing and spiritual and aesthetic enjoyment.[28]

**7. The Access Fund** is a nonprofit organization headquartered in Colorado dedicated to conserving rock-climbing areas. Its members regularly climb in Bears Ears.[29]

**8. The National Trust for Historic Preservation in the United States** is a private charitable, educational, nonprofit corporation chartered by Congress in 1949 to protect historic resources and to further the historic preservation policy of the United States.[30]

Proposed Intervenors are devoted to conservation of the Bears Ears region. They devoted significant resources to securing national monument status for Bears Ears during the Obama Administration. They then filed suit against the Government to challenge the 2017 Proclamation. And they again devoted significant resources to restoring national monument status for Bears Ears during the Biden Administration.

## ARGUMENT

**I.   PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT.**

Under Rule 24(a)(2), courts must grant intervention as of right if: (1) the motion is "timely"; (2) the movant "claims an interest relating to . . . the subject of the action"; (3)

---

[28] Decl. of Hillary Dessouky in Support of Patagonia Works's Standing at 13, *Hopi*, ECF No. 164-14 ("Dessouky Decl.").

[29] Decl. of Brad Barlage in Support of Access Fund's Standing at 2, *Hopi*, ECF No. 164-5 ("Barlage Decl."); Decl. of Erik Murdock in Support of Access Fund's Standing at 3, *Hopi*, ECF No. 164-6 ("Murdock Decl."); Decl. of Eve Tallman in Support of Access Fund's Standing at 2, *Hopi*, ECF No. 164-7 ("Tallman Decl."); Decl. of Michael Kennedy in Support of Access Fund's Standing at 3, *Hopi*, ECF No. 164-8 ("Kennedy Decl.").

[30] 54 U.S.C. § 312102; Ex. D, Merritt Decl. ¶¶ 4-5.

"dispos[ing] of the action may as a practical matter impair or impede the [movant's] ability to protect [its] interest"; and (4) that interest is not "adequately represented" by existing parties.[31] Courts in this circuit "follow a somewhat liberal line in allowing intervention,"[32] and these requirements "may be relaxed in cases raising significant public interests."[33] These factors squarely weigh in favor of intervention as of right.

    **1. Timeliness.** This motion is timely. Proposed Intervenors move to intervene roughly three months after the complaint was filed. This case is in its infancy; the Government has yet to file its answer. Intervention will accordingly not prejudice existing parties.[34] But, as explained below, denying intervention will prejudice Proposed Intervenors by preventing them from adequately defending their interests. So far as Proposed Intervenors are aware, no court in the Tenth Circuit has ever denied intervention as untimely if it was filed less than eleven months after the complaint.[35]

    **2. Interests.** Proposed Intervenors have "direct, substantial, and legally protectable" interests in the subject of the litigation.[36] In *Clinton*, the Tenth Circuit held that conservation groups had sufficient interests to intervene in a case challenging the creation of Grand Staircase.[37] These interests included: "their goal of vindicating their conservationist vision through [the

---

[31] *Coalition of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996).
[32] *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (quotation marks omitted).
[33] *Kane Cnty. v. United States*, 928 F.3d 877, 890 (10th Cir. 2019) (quotation marks omitted).
[34] *See Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1251 (10th Cir. 2001).
[35] *See In re SEC*, 296 F. App'x 637, 639 (10th Cir. 2008).
[36] *Coalition*, 100 F.3d at 839, 840 (citation omitted).
[37] *Clinton*, 255 F.3d at 1251-53.

monument's] preservation"; their members' interests in "visiting the monument for aesthetic, scientific, and recreational purposes"; "their financial stake in the tourism the monument has created"; and "their support of its creation."[38] Proposed Intervenors have these same interests.

UDB's mission is to "conserv[e] and preserv[e] the Bears Ears region."[39] FCM "works to protect . . . the cultural and natural landscapes of the . . . Bears Ears region".[40] "SVP and its members" work "to protect paleontological resources within" Bears Ears.[41] The National Trust has worked to protect "the [area's] cultural resources."[42] Archaeology Southwest, "significant cultural sites."[43] CLF, Patagonia Works, and the Access Fund likewise work to protect and preserve Bears Ears.[44]

Proposed Intervenors' members also regularly visit the area. UDB member Mark Maryboy "regularly visit[s] . . . areas [within Bears Ears] . . . to perform traditional Navajo ceremonies."[45] FCM member Vaughn Hadenfeldt typically spends "over 100 days per year[ ] hiking in the Bears Ears region."[46] Members of other Proposed Intervenors similarly visit and enjoy Bears Ears.[47]

---

[38] *Id.* at 1251-52; *see also WildEarth*, 604 F.3d at 1198 ("it [is] 'indisputable' that a prospective intervenor's environmental concern is a legally protectable interest").
[39] Ex. A., Maryboy Decl. ¶ 11.
[40] Ex. B, Hadenfeldt Decl. ¶¶ 11, 12.
[41] Ex. C, Polly Decl. ¶ 37.
[42] Ex. D, Merritt Decl. ¶ 6.
[43] Doelle Decl, ¶ 11.
[44] Metcalf Decl. ¶¶ 4, 7; Dessouky Decl. ¶¶ 7-9; Barlage Decl. ¶ 4.
[45] Ex. A., Maryboy Decl. ¶ 23.
[46] Ex. B, Hadenfeldt Decl. ¶ 10.
[47] Doelle Decl. ¶ 15; Dessouky Decl. ¶ 31; Barlage Decl. ¶ 7

SVP has a financial stake in Bears Ears: A "critical" source of funding for its members' research is tied to the region's monument status.[48]

And Proposed Intervenors advocated for Bears Ears' creation and then championed its restoration. *Supra* p. 3. Indeed, Proposed Intervenors have already filed suit to protect Bears Ears in pending litigation, underscoring their strong interest in defending its restoration.

**3. Impairment.** This requirement asks whether "the disposition of th[e] action," based on the requested relief, "may as a practical matter impair or impede" would-be intervenors' "ability to protect their interest."[49] This is a "minimal burden."[50] The Complaint requests a declaratory judgment that the proclamation restoring Bears Ears is unlawful and related injunctive relief.[51] A decision in Plaintiffs' favor could set aside part or all of the 2021 Proclamation, and may prohibit federal officials from enforcing it. Either result would significantly impair Proposed Intervenors' interests.

*First*, if Plaintiffs win, most or all of the areas in which Proposed Intervenors have an interest would lose their "monument designation" and suffer environmental degradation—a sufficient impairment of their interests under *Clinton*.[52] Under the 2017 Proclamation, at least four mining claims were located in lands now protected under the 2021 Proclamation.[53] If Plaintiffs succeed, those lands would be open to similar claims. Mining activities would severely impact

---

[48] Ex. C, Polly Decl. ¶¶ 52-53.
[49] *Clinton*, 255 F.3d at 1253.
[50] *WildEarth*, 604 F.3d at 1199.
[51] Compl. at 52.
[52] 255 F.3d at 1253-54; *see also, e.g.*, *Kane Cnty.*, 928 F.3d at 892 (suit to widen roads would impair environmental organization's "interest in preservation and enjoyment of the surrounding land").
[53] *See* Ex. B, Hadenfeldt Decl. ¶ 54.

Proposed Intervenors' use and enjoyment of the areas.[54] Lands stripped of monument status would also be exposed to looting and vandalism—conduct that was common under the 2017 Proclamation.[55]

*Second*, a decision in Plaintiffs' favor would threaten Proposed Intervenors' scientific research in Bears Ears. Much of SVP members' research in the area, for example, is tied to its monument status.[56] Rescinding that status would lead to decreased funding for that research.[57] It would also threaten the objects of that research, because scientifically crucial fossils would be unprotected from casual collection by visitors.[58]

*Third*, revoking the 2021 Proclamation would harm Proposed Intervenors' organizational interests. After the 2017 Proclamation, Proposed Intervenors were forced to redirect funding from other projects to protect the Revoked Area.[59] Rescinding the 2021 Proclamation would again force Proposed Intervenors to expend resources for baseline conservation efforts.

**4. Adequacy.** A proposed intervenor must establish that representation of its interests by existing parties "may be" inadequate.[60] "[T]he possibility of divergence of interest need not be great."[61] This showing "is easily made when the party upon which the intervenor must rely is the

---

[54] *See* Ex. A, Maryboy Decl. ¶ 52; Ex. B, Hadenfeldt Decl. ¶ 65.
[55] *See* Ex. B. Hadenfeldt Decl. ¶¶ 25, 33-36.
[56] Ex. C, Polly Decl. ¶¶ 52-53.
[57] *Id.*
[58] *Id.* ¶ 48.
[59] *See* Ex. A, Maryboy Decl. ¶¶ 30-34; Ex. B, Hadenfeldt Dec. ¶¶ 29-31; Doelle Decl. ¶¶ 31-32; Metcalf Decl. ¶ 17; Dessouky Decl. ¶ 39; Murdock Decl. ¶¶ 10-18.
[60] *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).
[61] *Kane Cnty.*, 928 F.3d at 894 (citation and quotation marks omitted).

government, . . . who may not view [the public] interest as coextensive with the intervenor's particular interest."[62]

Proposed Intervenors' interests are not adequately represented by the Government. The Government and Proposed Intervenors would likely endorse different limits on the President's authority under the Antiquities Act. Indeed, they are opposing parties in pending litigation over whether the President has the authority to revoke monuments. Moreover, the Government has to balance numerous priorities when defending the Proclamation, of which conservation is just one. But that is *the* priority for Proposed Intervenors. Because it is impossible for the Government to "carry out the task of protecting the public's interest" while defending Proposed Intervenors' private interests, Proposed Intervenors' interests are inadequately represented.[63] To the extent the interests of the Government and Proposed Intervenors align temporarily, the Government's policy priorities can and often do change, as the history of these monuments underscores.[64]

## II.   ALTERNATIVELY, PERMISSIVE INTERVENTION IS WARRANTED.

In the alternative, this Court should grant Proposed Intervenors permission to intervene under Rule 24(b). Rule 24(b) allows courts to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact" as long as intervention

---

[62] *Clinton,* 255 F.3d at 1254.

[63] *WildEarth Guardians,* 604 F.3d at 1200; *see also Clinton,* 255 F.3d at 1256 ("[T]he government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor."); *Kane Cnty.,* 928 F.3d at 893 (same).

[64] Because Proposed Intervenors and the Government are seeking "the same relief"—dismissal or denial of Plaintiffs' claims—Proposed Intervenors need not establish their own independent Article III standing. *See Kane Cnty.,* 928 F.3d at 886-887. In any event, all of the reasons supporting intervention as of right establish standing. *See id.* at 888.

will not "unduly delay or prejudice the adjudication of the original parties' rights."[65] Proposed Intervenors satisfy these criteria.

This motion is timely; intervention will not cause undue delay or prejudice. *Supra* at 7.

Proposed Intervenors' defense of the 2021 Proclamation will share with the underlying action a common question of law: the scope of Presidential authority under the Antiquities Act. Indeed, their defense of the 2021 Proclamation—that the President has the authority to issue such a proclamation—is directly responsive to Plaintiffs' claims.

Proposed Intervenors' participation will also "significantly contribute to the full development of the underlying factual issues . . . and to the just and equitable adjudication of the legal questions presented."[66] Proposed Intervenors have special factual expertise given their understanding of the land and its resources. And given their involvement in the 2017 Proclamation litigation, Proposed Intervenors' participation will allow for the full ventilation of the legal issues involved in this lawsuit.

---

[65] Fed. R. Civ. P. 24(b)(1)(B), (3).
[66] *State of Utah v. Kennecott Corp.*, 801 F. Supp. 553, 572 (D. Utah 1992).

## CONCLUSION

Proposed Intervenors respectfully request that the Court grant this motion to intervene.

November 23, 2022                     Respectfully submitted,

/s/ Brent V. Manning
Brent V. Manning (Utah State Bar No. 2075)
Michael Harmond (Utah State Bar No. 17230)
MANNING CURTIS BRADSHAW & BEDNAR PLLC
215 South State Street, Suite 350
Salt Lake City, Utah 84111
(801) 363-5678
bmanning@mc2b.com
mharmond@mc2b.com

Jim T. Banks (*pro hac vice* forthcoming)
Adam M. Kushner (*pro hac vice* forthcoming)
William E. Havemann (*pro hac vice* forthcoming)
Michael J. West (*pro hac vice* forthcoming)
Sarah Ruckriegle (*pro hac vice* forthcoming)
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
(202) 637-5600
james.banks@hoganlovells.com
adam.kushner@hoganlovells.com
will.havemann@hoganlovells.com
michael.west@hoganlovells.com
sarah.ruckriegle@hoganlovells.com

*Counsel for Proposed Intervenors Utah Diné Bikéyah, Friends of Cedar Mesa, the Society of Vertebrate Paleontology, Archaeology Southwest, Conservation Lands Foundation, Inc., Patagonia Works, The Access Fund, and the National Trust for Historic Preservation in the United States*

13

## WORD COUNT CERTIFICATION

Pursuant to D. Utah R. 7-1(a)(4), the undersigned hereby certifies that this Motion to Intervene under Rule 24 and Memorandum of Law in Support of Utah Diné Bikéyah, Friends of Cedar Mesa, The Society of Vertebrate Paleontology, Archaeology Southwest, Conservation Lands Foundation, Inc., Patagonia Works, The Access Fund, and The National Trust for Historic Preservation in the United States, complies with the word count limitation in that exclusive of the exempted portions, the motion contains 3,090 words.

/s/ Brent V. Manning
Brent V. Manning